GEORGE M. MURPHEY V. ILLINOIS TRUST & SAVINGS BANK.

FILED JANUARY 19, 1899.   No. 8617.

1. Note: CONSIDERATION: THIRD PERSONS: INDEMNITY. If A, as an accommodation to B, and in consideration of his promise of indemnity, gives his note to C for a debt owing to the latter by B, the note of A does not lack consideration. B's promise to A is a sufficient consideration to support A's promise to C.

2. False Representations: CANCELLATION OF CONTRACT. To entitle a party to be relieved from his contract on the ground that he was induced to make it by the false-representation of the other contracting party, he must plead and prove that the representation was made, that it was false, that he believed it, and acted upon it.

3. Landlord and Tenant: REPAIR OF PREMISES. In the absence of an express contract a landlord is not bound to repair leased premises, nor to pay for repairs made thereon by the tenant.

4. Vendor and Vendee: RIGHTS OF OCCUPANT. One who purchases real estate then in the actual possession of a third party under a written contract with the vendor thereby assumes the obligations of the contract of his vendor with such third party, in the absence of an express contract to the contrary.

5. ——: ——: IMPROVEMENTS. But where the contract between such occupant and vendor is that the latter would pay for improvements made on the property by the occupant, and such contract rests in parol, such purchaser is not bound thereby if he purchased without notice of such parol agreement.

6. Mortgages: RIGHTS OF OCCUPANT: IMPROVEMENTS. In the absence of express agreement to the contrary a mortgagee of real estate is not liable to the occupant thereof for improvements made by him on the premises in pursuance of an agreement with the owner that he would pay the occupant for the improvements so made,

ERROR from the district court of Saline county. Tried below before HASTINGS, J. *Affirmed.*

*F. I. Foss, E. E. McGintie,* and *W. R. Matson,* for plaintiff in error.

*F. C. Power, contra.*

RAGAN, C.

The Illinois Trust & Savings Bank brought this suit in the district court of Saline county against George M. Murphey upon a promissory note given by Murphey to the bank which upon its face purports to have been given for the rent of certain elevators. At the close of the evidence the jury, in obedience to an instruction of the district court, returned a verdict for the plaintiff, upon which the court entered a judgment, to review which Murphey has filed here a petition in error.

1. Murphey, to the action of the bank, interposed four defenses, though the same are not so separately stated and numbered in his answer. The first defense was that there was a want of consideration for the note sued upon. In support of this defense Murphey's evidence showed that in 1891 N. H. Warren & Co., an Illinois copartnership, owned some elevators at Crete, Dorchester, and Friend, Nebraska, and he entered into an agreement with this copartnership in and by which it furnished him these elevators. He put in $15,000 in money, took possession of them, and operated them in the buying and shipping of grain until August, 1894; that some time in 1891, at the request of Warren & Co., he executed his note for some $2,400 to the bank; that in 1892 he executed another note to the bank for about $3,000, and in 1893 executed to the bank the note in suit; that he executed these notes to the bank at the request of Warren & Co., because that copartnership was indebted to the bank; that he executed all these notes to the bank in pursuance of an agreement between himself and Warren & Co. that

the latter would indemnify him for so doing,—that is, that they would repay to him whatever money he paid the bank on those notes; that he paid the notes of 1891 and 1892, and all the notes in suit except some $375. The effect of this evidence is that Murphey executed the note in suit as an accommodation for Warren & Co. We do not think he executed the note without consideration. The promise of Warren & Co. to repay him what he should pay the bank was a sufficient consideration to support his promise to the bank, and the fact that Warren & Co. failed to keep their promise to indemnify did not release Murphey from his promise to the bank.

2. A second defense of Murphey's was that he was induced to execute all three of the notes mentioned by certain false and fraudulent representations made by one Gallop, alleged by Murphey to be the joint agent of Warren & Co. and the bank. The false representation which Murphey alleges Gallop made was that Warren & Co. were financially solvent, when as a matter of fact they were insolvent. Murphey's evidence completely failed to support this defense. In the first place Gallop was the general managing agent of Warren & Co. He was not the agent of the bank, except that the latter sent him out to Nebraska to have Murphey execute the note in suit; but as such agent of the bank he had neither express nor ostensible authority to make any representation as to the financial condition of Warren & Co. Furthermore, Murphey says he knew at the time he executed these notes that Warren & Co. were in financial straits; that they owed a great deal more than they were able to pay,—from all of which it is evident that Murphey did not rely upon any representation made by Gallop as to the financial responsibility of Warren & Co., even if Gallop was the agent of the bank and invested with authority to make such representations.

3. A third defense was in the nature of a counter-claim. Murphey sought to recover a judgment against the bank for all the moneys which he had paid out on all three of

the notes mentioned, basing his right to such recovery upon the theory that the bank had obtained the money from him by reason of the fraudulent representation of its agent, Gallop. What has already been said disposes of this defense.

4. A fourth defense interposed by Murphey was also in the nature of a counter-claim. He alleged that during the time he was in possession of these elevators he had made certain repairs upon them; that the repairs were necessary to the elevators; that the bank had received the benefit of the repairs and improvements made, and that such improvements were reasonably worth a certain sum. There are three views which may be taken of this defense: If the bank is to be regarded as the owner and Murphey the tenant of this property after February 26, 1894, at which time it is said the bank became the owner of the property, then to hold the bank liable for repairs made upon the leased premises by Murphey it is necessary for him to plead and prove an express contract, since the bank as landlord was not bound, in the absence of an express contract, to repair the leased premises itself, nor to pay for repairs made by its tenant. (*Turner v. Townsend*, 42 Neb. 376.) Murphey did not plead nor prove an express contract on the part of the bank to pay for any improvements put upon the property by him. If the bank, by purchasing this property from Warren & Co., became liable to carry out the contract existing between Murphey and Warren & Co., then the bank's liability and its rights as the representative of Warren & Co. were measured by the written contract existing between Murphey and Warren & Co., and this written contract does not bind Warren & Co. to keep the elevators in repair, nor to pay for improvements which Murphey might make thereon. But Murphey alleges that the contract between him and Warren & Co., by which the latter were to keep the elevators in repair and to make the necessary improvements thereon, rested in parol. But if this were so, the bank, by purchasing the property from

Warren & Co., would not be bound by an oral contract existing between Warren & Co. and Murphey of which it had no notice, and it is not pleaded nor proved in this record that the bank ever had any knowledge or notice of the oral contract which Murphey alleges existed between him and Warren & Co. in and by which the latter were to pay for the improvements made upon the elevators. Finally, this record tends to show that Warren & Co., being indebted to the bank, executed to it a trust deed or mortgage upon these elevators as security. If this is the status of the bank as regards the elevators, then the bank is not liable to Murphey for any repairs he may have made upon the property either before or after its interest in the property attached, in the absence of an express agreement upon the part of the bank authorizing such improvements. So that in any view we may take of the case the evidence discloses no liability upon the part of the bank to pay for such improvements as Murphey alleges he made upon the elevators. The evidence would not support a verdict in favor of Murphey had the jury rendered one. The district court was therefore right in instructing a verdict for the bank, and its judgment is

AFFIRMED.