C. F. BLANKE TEA & COFFEE COMPANY V. FRANK D. EAGER.

FILED JANUARY 18, 1906. No. 13,999.

Evidence examined, and *held* not to support the verdict of the jury.

ERROR to the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Reversed.*

*Mockett & Polk,* for plaintiff in error.

*J. C. McNerney, contra.*

DUFFIE, C.

Frank D. Eager sued the C. F. Blanke Tea & Coffee Company to recover for certain advertising and for stationery furnished one J. W. Johnston, the alleged agent of said company. It is claimed that Johnston was employed in advertising and selling goods of the Blanke company, and that the account sued on was made in their interest. The case was first tried in the county court, and upon appeal to the district court Eager filed an amended petition, which, it is alleged, contained new matter by way of an estoppel; and a motion was made to strike the petition,

from the files on the ground that it presented other and different issues than those tried in the county court. The motion was overruled, and this constitutes one of the errors assigned. If the petition filed in the district court presented issues not tried in the county court, the remedy was to strike them out, not to strike the whole petition.

The jury returned a verdict in favor of the plaintiff below, and it is urged that this verdict is not supported by the evidence. The undisputed evidence shows that the Blanke company are wholesale dealers in teas, coffees and spices, with their principal place of business in the city of St. Louis. Charles Spies & Co. have a house at Kansas City, Missouri, with the exclusive right of handling the Blanke company's coffees in certain specified territory, including the state of Nebraska. Eager offered in evidence the testimony of a stenographer employed by Johnston to the effect that Johnston received circular letters from the St. Louis house of the Blanke company containing directions and advice to their agents. It was also shown that Johnston made an arrangement with Tucker Bros. of Lincoln to handle a large amount of coffee, nearly a carload, agreeing to take back what was not disposed of within a certain time. Tucker Bros., from the great amount involved in the deal, were somewhat fearful of Johnston's authority to carry out his agreement and telegraphed the Blanke company at St. Louis relating thereto. No copy of this telegram, or of any reply, is contained in the record, but on July 15, 1901, Johnston wired the Blanke company as follows: "Your wire to Tucker Bros. shown me. Rush this order. Ship every pound. No consignment, simply agreed to relieve them of any goods not sellers, as I selected goods myself. Will sell them as much more within twenty days. Have written fully. Answer." It is further shown that some of the unsold coffee was taken back by Johnston. It is further in evidence that Eager gave directions to have five copies of his paper containing the advertisement of the Blanke company's goods, and which represented

Johnston as the agent for Nebraska, mailed to said company during the time the advertisement was running, and that orders for goods taken by Johnston were sometimes filled by the Blanke company from St. Louis, and at other times by Charles Spies & Co. of Kansas City. This is the only evidence we find in the record tending to show that Johnston was an agent of the Blanke company, or that they had knowledge that he was representing himself to be their agent. On the other hand, Mr. Seiter of the firm of Charles Spies & Co. testified that his firm had no interest in the business of the Blanke company, and the latter firm had no interest in the business of Charles Spies & Co. Johnston was employed by Charles Spies & Co. as a salesman on a commission basis, his only compensation being a percentage on such orders as he sent in and that were filled by the company. C. F. Blanke, president, and R. H. Blanke, secretary and treasurer, of the Blanke Company, testified that Johnston was never in the employ of that company; that the company had no interest in the business of Charles Spies & Co. of Kansas City; that Charles Spies & Co. handled their coffee, buying the same as any other customer, but having the exclusive sale thereof in certain territory; that sometimes in order to save time, freight and rehandling of the goods, the Blanke company shipped goods direct to the customers of Charles Spies & Co.; that this was done at the request of Charles Spies & Co. and for their convenience, but that the goods were billed to them and they made the collection thereof; that they never saw the papers containing the advertisement of their goods which Eager directed sent to them, and had no knowledge that Johnston was representing himself as their agent. They have no recollection of the telegram from Johnston above set out, but, if the same was received, it was referred to Charles Spies & Co.

We might here remark that the telegram was produced by Mr. Seiter, who found it among the papers of Charles Spies & Co., a fact indicating that the Blanke company

sent it to them as relating to their business. We think that sending circular letters of instructions to salesmen of Charles Spies & Co., who had the exclusive right to sell their coffees in Nebraska, or shipping, direct to the customers, goods, orders for which were taken by Charles Spies & Co. or their salesmen, has little weight as evidence tending to show that the parties to whom such letters were sent or on whose order goods were shipped, were agents of the Blanke company and authorized to contract bills on their behalf.

The evidence in this case lacks many of the evidential facts disclosed in *Blanke Tea & Coffee Co. v. Graham,* 5 Neb. (Unof.) 534, and the *Blanke Tea & Coffee Co. v. Trade Exhibit Co.,* 5 Neb. Unof.) 358. In these cases there was direct evidence that Johnston was the agent of the company, and circumstances making it beyond dispute that that company knew that Johnston was professing to act as its general agent.

The evidence in this case does not, in our judgment, support the verdict of the jury, and we recommend that the judgment of the district court be reversed and the cause remanded.

ALBERT and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded.

                                        REVERSED.