THELMA ROBERTS, APPELLANT, V. GEORGE H. ROGERS, APPELLEE.

FILED JUNE 14, 1935. No. 29263.

*Chambers & Holland,* for appellant.

*Peterson & Devoe, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

EBERLY, J.

This is an action brought by Thelma Roberts to recover damages for personal injuries sustained by her on or about November 17, 1932, when, as alleged in her petition, she was struck by a falling trapdoor in a house owned by defendant Rogers, and in which she was a tenant. She further alleged that, on the day referred to, she "had occasion to descend a stairway leading into the cellar of said house, and which is reached by means of a trapdoor located in the floor of said house just off the dining room; that before descending, plaintiff raised said trapdoor as far as was possible and commenced her descent into said basement; that * * * said trapdoor fell over upon her," causing the injuries of which she complains. Plaintiff also charged that this accident was due to the following defects in the leased premises: "A wabbly and unsteady stairway which shook when persons walked upon it, causing said trapdoor

to fall from the vibration from said stairs; that said trapdoor was defective in that no hook for it was maintained to prevent it from falling;" and as to the alleged defects in said premises, of which the defendant was thus charged with actual knowledge, the language of the petition is that the defendant, "at the time of the accident, was aware and for some time had been aware of the defective condition of the trapdoor and the steps, and particularly the first two steps above the basement floor, which were broken completely out."

On the other hand, the defendant's answer, admitting the ownership and leasing of the premises involved, by general denial traverses all of plaintiff's allegations of fact not specifically admitted; and, as an affirmative defense, pleads contributory negligence on the part of plaintiff.

Upon the trial, at the conclusion of plaintiff's evidence, the defendant moved for an instructed verdict in his behalf, on the following grounds, in substance: (1) That the evidence was insufficient; (2) that the defects in the premises, complained of, were as obvious and evident to plaintiff as to defendant, and were not "latent;" (3) contributory negligence on part of the plaintiff. This motion was sustained, and from the order of the trial court overruling her motion for a new trial, plaintiff appeals.

All parties to this appeal concede the applicable legal principles to be, in part: "If there be any testimony before the jury by which a finding in favor of the party on whom rests the burden of proof can be upheld, the court is not at liberty to disregard it and direct a verdict against him. In reviewing such action, this court will regard as conclusively established every fact which the evidence proves or tends to establish, and if, from the entire evidence thus construed, different minds might reasonably draw different conclusions, it will be deemed error on the part of the trial court to have directed a verdict thereon." *Bainter v. Appel,* 124 Neb. 40. See, also, *In re Estate of Hoagland,* 126 Neb. 377.

That this jurisdiction is committed to the following

view: "The rule of *caveat emptor* applies to leases of real estate, and, in the absence of warranty, deceit, or fraud on the part of the lessor, the lessee cannot recover for personal injuries received through latent defects therein, of which the lessor had no knowledge at the time of making the lease, and which were as patent to the lessee as to the lessor." *Davis v. Manning,* 98 Neb. 707.

It may be said that this pronouncement was reaffirmed in *Rankin v. Kountze Real Estate Co.,* 101 Neb. 174. The gist of the opinion in the *Rankin* case emphasizes the conclusion that, in an action against the landlord for injuries sustained by the tenant, the latter must show that the former had actual knowledge of the defects.

In *Davis v. Manning, supra,* Sedgwick, J., dissenting, states his views, as follows: "In this country the courts have generally applied the rule of *caveat emptor* between landlord and tenant about the same as the rule is applied between vendor and purchaser. That rule is that the landlord is not liable for 'latent' defects which the tenant has equal opportunity to observe. 'It is not his duty to search for defects, and if the defect is easily discoverable he need not mention it.' But 'if he knows of a defect which is likely to produce injury, the nature of which is such that careful examination by the tenant would not disclose it, he must notify the tenant of it.' Note to *Hines v. Willcox,* 96 Tenn. 148, in 34 L. R. A. 824, 827. This seems to be the universal rule, as it is between vendor and purchaser. When can it be said that the landlord *knows* of defects? Does this mean that he must have personally seen and examined the defect? I think that the majority opinion goes so far as to so hold. If some one else had seen and examined the defect and had suggested it to the landlord, the landlord could not have been said to *know* of it, as defined in the majority opinion."

In this connection, it will be noted that in *Davis v. Manning,* 98 Neb. 707, this court expressly overruled paragraph 3 of the syllabus of the same case reported in 97 Neb. 658, which declared the rule, as to latent defects in

leased premises, to be that liability attached "if a landlord rents a house in a dangerous condition, and knows at the time, *or ought to know from facts within his knowledge, that it is dangerous,* and such dangerous condition is not known to the tenant." (Italics ours.)

In other words, in this jurisdiction, by legislative action (Comp. St. 1929, sec. 49-101), we have adopted the common law of England as governing the relation of landlord and tenant.

As applicable and not inconsistent with the federal Constitution, with the organic laws of this state, or with subsequent legislative enactments, the common-law rules here controlling, as applied to the facts in the instant case, are as follows:

In the absence of express contract to the contrary, a tenant takes demised premises as he finds them, and there is no implied warranty by the landlord that they are safe or fit for occupancy. The rule of *caveat emptor* applies. 16 R. C. L. 777, sec. 271; 36 C. J. 204; *Hatzis v. United States Fuel Co.,* 82 Utah, 38; *Miller v. Vance Lumber Co.,* 167 Wash. 348; *Gray v. Pearline,* 328 Mo. 1192; *Davis v. Manning,* 98 Neb. 707; *Rankin v. Kountze Real Estate Co.,* 101 Neb. 174.

In the absence of contract, no duty to repair leased premises devolves upon the landlord, but, on the contrary, the relation of landlord and tenant devolves that duty upon the tenant. *Whitehead v. Comstock & Co.,* 25 R. I. 423; 16 R. C. L. 1030, sec. 552.

A landlord is under no duty to change the visible form and mode of construction of leased premises in order to make the premises safe for his tenant, nor is he bound to remove obvious sources of danger; as to these the tenant assumes the risk. *Andrews v. Williamson,* 193 Mass. 92; *Miller v. Hooper,* 119 Me. 527.

A landlord is not liable to his tenant for any defects existing in the demised premises at the time of the lease that are perceptible to the senses or that can be discovered by reasonable inspection or examination. *Doyle v. Union*

*P. R. Co.,* 147 U. S. 413; *Keates v. Earl of Cadogan,* 10 C. B. (Eng.) 591; *Woods v. Naumkeag Steam Cotton Co.,* 134 Mass. 357; *Berlin v. Wall,* 122 Va. 425; *Hines v. Willcox,* 96 Tenn. 148; *Booth v. Merriam,* 155 Mass. 521; *Bowe v. Hunking,* 135 Mass. 380.

The facts set forth in the evidence now before us, viewed in the light of the principles thus outlined, further limit the present inquiry to the question of whether or not the defects complained of are latent defects, or are obvious, patent defects.

A "defect" may be defined as "a want or absence of something necessary for completeness or perfection; a lack or absence of something essential to completeness; * * * a deficiency in something essential to the proper use for the purpose for which a thing is to be used." 18 C. J. 458.

The term "latent defect," in the light of the foregoing definition of "defect," may be properly defined as "a defect which reasonably careful inspection will not reveal; one which could not have been discovered by inspection." 36 C. J. 956.

As to the evidence in the instant case: Benjamin B. Gardner, called as a witness for plaintiff, testified, on cross-examination, on the subject of this cellar-way, as follows: "Q. Did you, when you talked with Mr. Rogers about the condition of that stairway, point out to him what you considered the trouble was? A. No. Q. Did you consider the thing you had in mind in making the stairway defective evident to any one who would look to see? A. I always knew those steps were originally constructed faulty, contrary to the rules of good carpentering. * * * Q. Whatever was wrong there you considered Mr. Rogers could see without it being pointed out to him, didn't you? A. Yes, sir. Q. Or any one else could see and observe for themselves the condition of that entire cellar-way? A. Yes, sir. * * * Q. As far as you know there has been no change? A. I saw that door about six months ago and I did not see any changes. * * * Q. Do you remember telling him you could not account for the way that door had fallen down

unless something behind it after you made the test Mr. Rogers asked you to make. A. I told him a draft would possibly do it or slight vibration, and then I told him the door stood too straight up. The door stood just,—well, when it is leaned clear back against that south wall it stands at an angle, I presume, of about 90 degrees." This witness also testified that, when the trapdoor was opened up and pushed back, "it didn't go more than six inches out of perpendicular to reach the wall." And further: "Q. And when this door is open and leaned up against the south wall of that room it is standing at an angle of how many degrees? A. Well, I don't want to pretend to be so exact about it, but I should say about 90 degrees. You take the average angle roof, it is about 45 degrees, and then double that and that gives an idea about how straight it stands up and down."

Deacon R. Gardner, a witness produced by plaintiff, testified on direct examination, with reference to the condition of the trapdoor and stairway leading to the basement of the house, that he was familiar with it, and, "Q. Gone up and down it several times in your life? A. Yes, sir; I have been up and down it many times. I was always careful. I was aware that door was always faulty." And, on cross-examination: "Q. Do you know what the distance is between the south edge of the trapdoor and the south wall of the closet? A. I would say it was about five inches; it is not very much. Q. So that when the door was laid back against the south wall it would be off perpendicular at least four and a half or five inches; that would be true, wouldn't it? A. It would be off a little. It would not go over far enough to give it enough advantage to stay there. Q. Now in order for that door to fall it would have to be left so that the upper part of the door was not over against the south wall of the closet, that is true, isn't it? A. Well, I could not hardly say to that because I was always sure that I had it over and it almost hit me a couple of times."

Expert witness Taylor, a contractor and builder, produced by plaintiff, testified, after an examination of the

pictures of the trapdoor and stairway, that they were of simple construction, but not built according to the accepted manner, and were dangerous, and that any individual with fairly good eyesight could see just exactly how the trapdoor opened and how it leaned against the wall of the building.

As indicated by the foregoing excerpts, the evidence in the record, as an entirety, discloses that, so far as defects alleged in the petition were concerned, the dangerous condition actually inhered in the construction of the trapdoor, and became such as and when subjected to the natural law of gravitation. As leaned against the wall, in an almost vertical position, this trapdoor with the supporting wall formed an unstable figure with a base of approximately five inches. It was thus apparent to any observer that whenever the center of gravity of the trapdoor, by a movement thereof, no matter how occasioned, fell without the five-inch base, the trapdoor was bound to descend. The fact that there had been no hook provided to secure it was equally obvious.

The inspection of the exhibits in the record leads to the same conclusion, which is reinforced by the evidence set out herein, viz., that the defects occasioning the accident were obvious and discoverable by a proper inspection. Therefore, they may not be considered as "latent defects," but rather as defects due wholly to apparent errors in the original construction.

The controlling principle in this case appears to be the following: A landlord is ordinarily under no duty to change the visible form and mode of simple construction of leased premises in order to make the premises safe for his tenant, nor is he bound to remove obvious sources of danger; as to these the tenant assumes the risk.

It follows that the order of the trial court directing a verdict for the defendant was correct, and its judgment thereon is

AFFIRMED.