LESLIE CAROL BARTHOLOMEW, APPELLANT, V. SKELLY OIL COMPANY, APPELLEE.

12 N. W. 2d 122

FILED DECEMBER 10, 1943. No. 31676.

*E. F. Armstrong, Lowell E. Hahn* and *Edgar Ferneau*, for appellant.

*Beghtol, Foe & Rankin* and *Lee Kelligar*, contra.

Heard before SIMMONS, C. J., PAINE, CARTER, CHAPPELL, and WENKE, JJ., and POLK and NUSS, District Judges.

NUSS, District Judge.

Action by Leslie Carol Bartholomew against the Skelly Oil Company to recover damages for personal injuries suffered by the plaintiff as a result of an explosion of gasoline at a filling station where the plaintiff was working. At the conclusion of the evidence the trial court directed a verdict for the defendant and the plaintiff appeals.

It is undisputed in the evidence that the defendant, Skelly Oil Company, owned the filling station in question; that on the 19th day of August, 1940, it leased the same in writing to Dean Turnbull who operated the same. The lease provided in substance that the lessee should do nothing to

injure or damage the property; that on the termination of the lease to return the same to lessor in as good condition as when received, reasonable wear and tear excepted, and to pay for any part which might be destroyed or damaged; to save the lessor harmless against all claims and demands for any loss, damage or injury to person or property caused by the lessee's operation of the station; and that none of the provisions of the lease should be construed as reserving to lessor any right to exercise any control over the business or operations of the lessee or to direct in any manner how such business should be conducted; that the lessor should have no control or direction over the employment or conduct of employees of lessee and that in no event should any person or persons employed by lessee be considered an employee of lessor.

About two months before January 31, 1941, the lessee, Turnbull and his employees noticed excessive gasoline fumes around the station and particularly from the pits where the storage tanks were located. Turnbull testifies that he notified the company thereof; that he "had mentioned the fact to the district manager; I had notified the district representative, his name was T. E. Badger." Being asked by plaintiff's attorney who Mr. Badger was he replied, "He was the district representative for Skelly Oil Company." That he knew him well; that he came to the filling station at fairly regular times, once or twice a week or some times once every two or three weeks. That he mentioned the fumes to Badger at the station and Badger, "suggested I get a plumber." That he, Turnbull, contacted one Steve Combs, a plumber, who made an investigation and informed Turnbull it would cost $5 or $6 to make the repairs. "I told the district representative and he told me to go ahead and hire Mr. Combs." "Q. He instructed you to go ahead and have him make the repair, did he? A. That's right." That Mr. Combs came to the station on the 31st day of January, 1941. That in order to drive the fumes from the pit he obtained an electric fan, took it to the mouth of the pit of the manhole and started the fan going when a spark from the

fan ignited the gas and caused a terrific explosion which killed Combs and injured the plaintiff who was standing about five or six feet away. The plaintiff at that time and for some time prior thereto had been an employee of Turnbull.

The foregoing is all the evidence upon which the plaintiff seeks to hold the defendant company liable.

The accident and plaintiff's injuries in this case were caused by the obvious negligence of the plumber, Combs. The question, therefore, is whether the defendant is responsible for the negligence of Combs. Admittedly if Combs were an employee of the defendant the defendant would be liable for his negligence. It is not claimed that the defendant would be liable otherwise.

Under the lease it was the duty, not of the defendant company, but of Turnbull to make any and all repairs upon or in connection with the premises. In the absence of an express covenant or stipulation in the lease, a lessor is not bound to make ordinary repairs to leased property. *Turner v. Townsend,* 42 Neb. 376, 60 N. W. 587; *Murphey v. Illinois Trust & Savings Bank,* 57 Neb. 519, 77 N. W. 1102; *Young v. Rohrbough,* 88 Neb. 101, 129 N. W. 167; *Daggett v. Panebianco,* 106 Neb. 572, 184 N. W. 117; *Roberts v. Rogers,* 129 Neb. 298, 302, 261 N. W. 354; 36 C. J. 125; 32 Am. Jur. 522, sec. 657. There is nothing whatever in the lease in this case either directly or indirectly imposing upon the company the duty to make any repairs.

On the contrary, the provision of the lease requiring the tenant to yield the premises at the termination thereof in substantially the same condition as when the tenant took over, completely negatives any duty of the landlord to repair or to pay for repairs. *Turner v. Townsend, supra.* Since the lease imposes upon the tenant, Turnbull, and not upon the company, the duty of making repairs, any claim that the company assumed or undertook to make the repairs in question, must, under the above authorities, be substantiated by a preponderance of evidence to that effect.

Has the plaintiff sustained this burden? We think not.

Mr. Badger could have "suggested I get a plumber," and could have "told me to go ahead and hire Mr. Combs," and could have, indeed, instructed Turnbull to go ahead and have Combs make the repair, as was suggested in the question of counsel, and still not have undertaken to waive the company's rights under the lease or to undertake for the defendant the hiring and paying of Combs. Those statements are entirely consistent with a mutual recognition of the tenant's duty of making the repairs. We believe that a verdict based, as it would have to be, upon that evidence alone could not be sustained.

Assuming, however, that Badger did direct Turnbull to hire Combs for the company and that the company would pay him therefor, there is, nevertheless, an insuperable obstacle. There is a total failure of any evidence to show that Badger had any authority to waive the company's rights under the law and the lease and to undertake or assume for the company a duty which was stipulated against in the lease. Both Turnbull and the plaintiff testify that Badger was "district representative" for the defendant company, but beyond that there is nothing whatever to show his status, duties or authority. It would require sheer assumption to find that Badger had authority to waive the provisions of the lease and to make repairs in the filling station. A person relying upon the act of an agent has the burden of proving such agent's authority. *C. F. Blanke Tea & Coffee Co. v. Eager,* 75 Neb. 562, 106 N. W. 603; *Trephagen v. City of South Omaha,* 69 Neb. 577, 96 N. W. 248, 111 Am. St. Rep. 570; *Ketelman v. Chicago Brush Co.,* 65 Neb. 429, 91 N. W. 282; 14a C. J. 399; 13 Am. Jur. 905, sec. 944.

The evidence fails completely to show that Badger had any authority, actual or ostensible, to bind the company in the making of the repairs. Surely the term "district representative" is too vague to permit an assumption by the court or a jury of the requisite authority.

Since this disposes of the case it is not necessary to consider whether the plaintiff was guilty of contributory neg-

ligence in knowingly remaining within the area of danger just prior to the explosion.

The judgment of the district court is affirmed.

AFFIRMED.