VIOLETTE A. ZUROSKI, APPELLEE, v. ESTATE OF W. R. STRICKLAND, DECEASED, APPELLANT.

126 N. W. 2d 888

Filed March 13, 1964. No. 35586.

Doerr & Doerr, for appellant.

Schrempp, Lathrop & Rosenthal, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BOSLAUGH, J.

This is an action for damages brought by Violette A. Zuroski, the plaintiff, against W. R. Strickland. Strickland died during the pendency of the action and it was revived against The Omaha National Bank of Omaha, Nebraska, as executor of the estate of W. R. Strickland, deceased.

The jury returned a verdict in favor of the plaintiff in the amount of $4,500. The defendant's motion for judgment notwithstanding the verdict was overruled and it has appealed.

The record shows that on February 15, 1952, the plaintiff and her husband entered into an oral lease with Strickland for a residence property located at 4112 La-Fayette Avenue in Omaha, Nebraska. The plaintiff produced evidence that as a part of the lease agreement Strickland agreed to take care of the repairs on the premises; that sometime in 1959 the guttering and downspout near the back door of the house became defective and allowed water to fall from the roof and collect on the concrete walk immediately outside of the rear door of the house; that Strickland was notified that the downspout was defective and needed repair but that the repairs were not made; that on February 11, 1961, water from melting snow and ice on the roof of the house had collected on the walk outside the rear door of the house and ice had formed; and that the plaintiff was injured when she slipped and fell on the ice when she stepped out of the rear door of the house.

The defendant's assignments of error relate to the sufficiency of the evidence to sustain the verdict and whether a lessor is liable for damages for personal injuries resulting from the breach of a covenant to repair.

The defendant contends that the evidence failed to show that Strickland agreed to make the repairs to the premises, that he failed to keep the premises in repair, and that the failure to repair was a proximate cause of the plaintiff's injuries.

The word "repair" means to restore to a sound or good state after decay, injury, dilapidation, or partial destruction. Quist v. Duda, 159 Neb. 393, 67 N. W. 2d 481. There was direct evidence that Strickland agreed to "take care of all the repair work on the house"; that repairs which were made on the premises were made at the direction of Strickland and at his expense; that the downspout

leading from the roof above the rear door of the house had fallen down and that water coming from the roof was discharged directly onto the walk outside of the rear door of the house; that Strickland had been notified of the defective condition of the downspout on a number of occasions but no repairs had been made; that at the time of the accident water was dripping down from the roof in front of the doorway and ice had formed on the walk; and that the plaintiff fell on the ice as she stepped out of the back door of the house.

The defendant argues that the evidence as to proximate cause is insufficient because the ice near the rear door might have been formed in part from water draining from other areas. There was evidence that on the day of the accident there was snow and ice in other places on the ground around the house, but there was no evidence that water drained from these areas toward the back door and collected on the walk outside the rear door. As we view the record, the jury could find that ice had formed near the rear door of the house as the result of the defective guttering and downspout.

The remaining question is whether a lessor is liable for personal injuries which result from the breach of a covenant to repair. The authorities disagree as to whether a lessor can be held liable for personal injuries under such circumstances.

In Fried v. Buhrmann, 128 Neb. 590, 259 N. W. 512, a lessor was held liable when the stand upon which a gas plate rested collapsed and spilled hot water upon a child of the tenant. In that case the lessor had warranted that the furniture was safe and had agreed to keep it in repair. This court held that where a lessor leases a furnished apartment, warrants the safety of the furniture, and agrees to keep it in repair, it fixes his duty and he is liable to members of the tenant's family for injuries resulting from his negligence in failing to perform this duty.

In several subsequent cases this court has indicated

that it did not consider the Fried case to be decisive of the question which we are now considering and that the question had not yet been determined in this jurisdiction. See, Van Avery v. Platte Valley Land & Investment Co., 133 Neb. 314, 275 N. W. 288; Quist v. Duda, *supra;* Sipprell v. Merner Motors, 164 Neb. 447, 82 N. W. 2d 648.

Although a majority of the early cases appears to have adopted the rule that the lessor cannot be held liable, it has been suggested that there is a modern trend toward the view that the breach of a lessor's agreement to make repairs constitutes a ground of liability for personal injuries suffered by the lessee or one of his family, and that the decisions appear to be about equally divided on the question. See Annotations, 78 A. L. R. 2d 1238 and 163 A. L. R. 300. In at least one jurisdiction an earlier case which adopted the rule of nonliability has been overruled. See Williams v. Davis, 188 Kan. 385, 362 P. 2d 641.

As was pointed out in the Van Avery case, the American Law Institute adopted the view that the landlord is liable. Restatement, Torts, § 357, p. 967, provides as follows:

"A lessor of land is subject to liability for bodily harm caused to his lessee and others upon the land with the consent of the lessee or his sub-lessee by a condition of disrepair existing before or arising after the lessee has taken possession, if

"(a) the lessor, as such, has agreed by a covenant in the lease or otherwise, to keep the land in repair, and

"(b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented." The rule as stated is qualified under the heading of "Comment: * * * Nature of lessor's duty:" in part as follows: "Since the duty arises out of the existence of the contract to repair, the contract defines the extent of the duty. Unless the contract stipulates that the lessor shall inspect

the premises to ascertain the need of repairs, a contract to keep the interior in safe condition subjects the lessor to liability if, but only if, reasonable care is not exercised after the lessee has given him notice of the need of repairs."

It is our opinion that the rule as stated in the Restatement is the better view and it is the rule which we adopt as the law of this state. The reasoning which supported the decision in the Fried case supports the decision which we have reached in this case.

The judgment of the district court is affirmed.

**AFFIRMED.**

BROWER, J., dissenting.

I find I am unable to agree with the opinion of the court in this cause and must respectfully dissent. The evidence disclosed by the record is correctly summarized in the opinion of the court and with that I am in full accord.

I do not agree however with the rule of law applied to those facts. The opinion sets out the division of authority that exists among the courts of last resort with respect to the law. No good purpose would be served by citing the great number of cases that agree with the views hereinafter stated. It must be conceded that there are numerous authorities supporting the opinion of the court. It might not be remiss however to state that a study of the annotations cited by the court in 78 A. L. R. 2d 1238 and 163 A. L. R. 300, indicates that the majority of the courts still adhere to the opinion expressed herein. This in spite of the statements of the writers of the annotations that the authorities are about evenly divided. Neither am I impressed with the statements of the writers of the annotations that the trend appears to favor the rule adopted by the court in its second syllabus. This undoubtedly is true, as once practically all of the decisions were that a landlord who breaches his covenant or promise to make repairs is not

thereby liable in tort for personal injuries to the tenant, or one in privity with the latter, caused by a condition which the landlord neglected to remedy. Whatever breaking away from this rule there is would consequently be a trend.

To my mind the reasoning back of what I consider to be the majority rule was sound and still is. I will cite some of those cases only to illustrate that reasoning. In Jordan v. Miller (1919), 179 N. C. 73, 101 S. E. 550, the court recognized the rule that where a lessor contracts to keep the premises in repair, his breach of such promise will not ordinarily entitle the tenant, his family, servants, or guests personally injured from a defect therein, existing because of the negligence of the landlord in failing to comply with his agreement to repair, to recover indemnity for such injury, whether in contract or tort, since such damages are too remote, and cannot be said to be fairly within the contemplation of the parties.

In Spinks v. Asp, 192 Ky. 550, 234 S. W. 14, the court in its opinion stated: "The mere breach of contract by the landlord to make the repairs of a tenement does not entail upon the landlord all the consequences which might flow directly and indirectly from such failure any more than the failure of any other obligee in a contract to perform his undertaking. If one promise to pay a given sum of money at a given time and fails to make such payment, the payee may have an action for the sum due, but not for the loss which the payee suffered by reason of not having the money with which to make investments which offered large gains, because such consequences were not reasonably in contemplation of the parties to the contract at the time it was made and are entirely too remote and conjectural to be the basis of an action at law. So in a contract between a landlord and tenant, the agreement to make repairs of a defect in a floor, as in the instant case, can entail upon the landlord no consequences which do not naturally and proximately

flow from a breach of contract independently of the tort which resulted in personal injury, if any there be."

This to my mind is still sound. I do not think a landlord who agrees to keep the premises in repair contemplates or realizes that if requested repairs are not promptly made he will be made responsible for any accident or injury occasioned by them not being furnished. Furthermore to my mind the tenant is not at the time of the agreement to repair conscious of any such implication and will be surprised at his good fortune when the doctrine of this decision is explained to him after he, his family, or friends slip, trip, or fall.

Theoretically of course in a tort action the landlord might establish the affirmative defense of contributory negligence under our comparative negligence statute or perhaps of assumption of the risk and thus escape liability. As a practical matter however the mishap arises generally in his absence. Responsibility occurs not by any act of commission on his part. He has little access to the demised premises and any such asserted defense can be proved generally speaking only by testimony or admissions, if any, of the tenant or his privies. As a practical matter he is a little less liable than an insurer though he never had consciously assumed any such obligation.

A leasehold tenure of any length will sooner or later run into some feature of disrepair which in fairness has to be assumed by the landlord. Sooner or later a situation will arise where previous actions can be said to establish or at least indicate an agreement to make such repairs.

In Jacobson v. Leventhal (1930), 128 Me. 424, 148 A. 281, 68 A. L. R. 1192, the court stated: "The defendant's position is supported by what we deem the better judicial authority.

"If the lessor contracts to repair premises in the possession and under the control of his tenant, his liability is no greater or different than would be the liability of a

third party, e.g., a carpenter or other mechanic who contracts to make such repairs.

"That this is the rule prevailing in many jurisdictions is not questioned by the plaintiff's learned counsel, but he argues that by a series of decisions and dicta the court of Maine shows or indicates a disagreement with such rule. * * *

"These quoted passages cannot be objected to as unsound, but there is nothing in them nor in the cases cited indicating that a lessor who contracts to repair leased premises and thus becomes charged with the contractual duty, if he breaks the contract, is liable in tort for negligence."

It is to be hoped the court will not hereafter hold that a carpenter who does not timely perform his contract will be liable in tort for an accident occasioned by his delay. As far as a landlord is concerned he had better in the future have a written lease with his tenant requiring the tenant to make the repairs and thereafter hold to it.

It has long been the rule in this state that a tenant may not refuse to pay rent and keep possession of the leased premises, even where the landlord has failed to make repairs in accordance with the lease agreement. The principle is that the tenant by retaining possession after the lessor's breach has waived the breach and accepts the premises as they are. In other words, the only remedy of the tenant is to declare a breach and move off of the leased premises. I can see no difference in principle in the instant case. If the tenant, after a breach of the lease by the landlord in failing to make repairs, continues in possession he in effect waives the breach and accepts the premises as they are for the rent charged. It appears to me that the present opinion creates a liability which is inconsistent with the last holding previously existing on the subject. Consistent with the foregoing is our holding in Roberts v. Rogers, 129 Neb. 298, 261 N. W. 354, that a lessor is not bound to remove obvious sources of danger; as to these the

tenant assumes the risk. Even where the lessor contracted to make repairs and had notice of the defect as in the instant case, it would appear that the tenant who remains in the premises after the defect was known to him assumes the risk, and has no action in tort against the lessor for injuries arising therefrom. I submit that if a tenant cannot retain possession and enforce the contractual provisions of his lease, there is no basis for a holding that he can retain possession and sue in tort for damages resulting from the landlord's breach of the lease in failing to make repairs.

CARTER, J., authorizes me to state that he concurs in this dissent.