JOHN REICHENEKER, APPELLEE, v. RICHARD R. SEWARD, DOING BUSINESS AS "CRAZY DICK'S MARKET," AND QUALITY PETROLEUM COMPANY, INC., A CORPORATION, APPELLANT.

277 N. W. 2d 539

Filed April 17, 1979. No. 41856.

Maupin, Dent, Kay & Satterfield and David A. Bush, for appellant Seward.

Tye, Worlock, Tye, Jacobsen & Orr and Patrick J. Nelson, for appellant Quality.

Knapp, State, Yeagley, Mues & Sidwell, for appellee.

Heard before KRIVOSHA, C. J., McCOWN, CLINTON, and BRODKEY, JJ., and STANLEY, District Judge.

STANLEY, District Judge.

This is an action for damages brought by John Reicheneker, as plaintiff, against Richard R. Seward, doing business as "Crazy Dick's Market" (Seward), and Quality Petroleum Company, Inc. (Quality). The jury returned a verdict for the plaintiff and against the defendants in the amount of $87,500. Both defendants filed motions for a new trial, with defendant Quality filing an alternative motion for judgment notwithstanding the verdict. The motions were overruled, and both defendants appeal, assigning as errors: (1) The trial court's failure to grant defendant Quality's motion for judgment notwithstanding the verdict; (2) denying both defendants' motions for a mistrial because of a reference to insurance; (3) excessive damages; and (4) error in submitting certain instructions to the jury.

Plaintiff claims that on December 30, 1973, while a business patron of "Crazy Dick's Market" car wash, he was injured when a cable operating the car wash door broke and struck him in his left eye.

At the time of the accident, Seward was leasing the premises and facilities from Quality. The written lease was for a period of 1 year, from January 1, 1973, through December 31, 1973. The lease provided in paragraph five that lessor was to keep the premises in good condition, and in paragraph nine that lessee would indemnify the lessor for any and all damage claims, suits, or judgments arising out of any injury to persons using the leased premises. Plaintiff offered in evidence the lease with paragraph nine obliterated, to which defendants objected. The trial court received the exhibit into evidence and granted leave to defendants to offer the entire lease at the applicable time. The relevancy of the lease was settled when defendant Quality placed in evidence the entire lease. Any complaint of defendants concerning admission of the lease expired with its offer.

Defendant Seward testified, concerning the actual operations under the lease, that Quality representatives came monthly to the station to audit and check on maintenance problems, but seldom made repairs because Seward took care of anything that needed repair and sent Quality the bill which Quality always paid. Seward related that he or his wife checked the car wash every morning because maintenance on the doors was important, and he visually checked the door and generally put a leather glove on and checked the cables and the loop in the cable where it attached to the door, but never made an effort to feel "clear around the loop" end. He further stated that during the term of the lease, if a cable had broken, he, Seward, would have replaced it himself as he had replaced several cables over the past years at his cost. He stated that Quality did not do routine

maintenance on the car wash because keeping the car wash maintained was his responsibility. Jack Ginder, owner of defendant Quality, testified that Quality owned the car wash involved at the time of the accident and the car wash comprised a part of the premises leased to defendant Seward, but Seward was not paying separate rent for the car wash and Seward kept all the profits from its operation. Ginder also stated that Seward made all repairs on the car wash or if the Overhead Door Company made repairs, Quality would pay for it if they were substantial. The *evidence supports a finding* that lessee Seward assumed the responsibility for maintenance on the car wash notwithstanding the provisions of paragraph five of the lease.

With regard to Quality's liability, the following rule, approved by this court in Sipprell v. Merner Motors, 164 Neb. 447, 82 N. W. 2d 648, is applicable here: "Subject to limited exceptions, the general rule is that guests and invitees of a tenant derive their right to enter upon leased premises through the tenant, and have the same but no greater right to proceed against the landlord for personal injuries resulting from alleged defects on the premises than the tenant has." The exceptions are: First, whenever the premises are leased for a public purpose and the lessor knows at the time of leasing that a dangerous condition exists which renders the premises unsafe for the public use intended, the lessor is liable for injuries sustained by patrons of the lessee; secondly, whenever the lessor has contracted to keep the premises in good repair and retains control for that purpose.

A lessor of land is subject to liability for bodily harm caused to his lessee and others upon the land with the consent of the lessee or his sublessee by a condition of disrepair existing before or arising after the lessee has taken possession, if: (a) the lessor, as such, has agreed by a covenant in the lease or

otherwise, to keep the land in repair, and (b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented. "Since the duty arises out of the existence of the contract to repair, the contract defines the extent of the duty. Unless the contract stipulates that the lessor shall inspect the premises to ascertain the need of repairs, a contract to keep the interior in safe condition subjects the lessor to liability if, but only if, reasonable care is not exercised after the lessee has given him notice of the need of repairs." Zuroski v. Estate of Strickland, 176 Neb. 633, 126 N. W. 2d 888; Quist v. Duda, 159 Neb. 393, 67 N. W. 2d 481.

The evidence clearly establishes that the conditions and requirements of these applicable exceptions have not been met in this case since the lessee assumed the maintenance on the car wash, and he did so on many occasions without notifying the lessor of any need for repairs. Thus, there was no duty imposed on the lessor as to the defective cable after commencement of the lease. We, therefore, reach the conclusion that under the facts and circumstances of this case the lessor, Quality Petroleum Company, Inc. was not liable for bodily harm to the plaintiff under the exception to the general rule holding lessor liable for injuries to business visitors of the lessee. The trial court should have granted Quality's motion to dismiss plaintiff's petition as to Quality and to direct a verdict in favor of defendant Quality.

With regard to Seward's liability, plaintiff testified that on December 30, 1973, he went to the car wash to wash his pickup truck. Due to inclement weather the entrance door was closed so he got out of his vehicle, walked over to the buttons by which the door is raised and lowered, and pushed the "up" button. The door went up about 3 feet and stopped. He pushed the "down" button and the door went down.

He then pushed the "up" button and the door opened completely. He proceeded to drive into the stall, pressed the "down" button, and the door closed. After washing his vehicle he walked over to the door and pushed the "up" button; the door came up about 3 feet and stopped. He observed a loop in the cable, where it attached to the door, and bent down to look at it, at which time the cable snapped and struck him in the left eye. Shortly afterwards he was taken to a hospital where he received extensive medical treatment.

William K. Mathews, a professional engineer with a background in the design and use of wire cable, testified that in his opinion the cable broke at the loop where it attached to the door. The break was progressive in nature and did not occur as a single action. It was a gradual progression of wire failure over a period of time. A careful inspection of the cable a week prior to the accident would have revealed broken strands of wire, and an inspection made a month prior to the break would have indicated a deterioration of the cable. This expert witness presented a photographic slide enlargement of the broken cable to confirm his findings. If the jury believed this evidence, as apparently it did, Seward's failure to find the defective cable and to warn the plaintiff of the potential danger constituted actionable negligence. A proprietor must take reasonable precautions to protect invitees from foreseeable dangers in arrangement and use of his premises. Hansen v. First Westside Bank, 182 Neb. 664, 156 N. W. 2d 790. The verdict in favor of plaintiff and against Seward was correct.

Plaintiff was 33 years old, married, and had two children, ages 9 and 12. He is a skilled craftsman engaged in tile and floor installation and had been so employed for 5 years prior to the accident. He testified that his work demanded excellent depth perception vision which he had before the accident, but the

injury left him without this essential ability; that his wage loss and medical expenses to the time of trial exceeded $9,200 and additional medical treatment would be necessary; and that due to his eye injury his future earning ability would be decreased because he could not continue to get top wages.

Two of plaintiff's coworkers testified they had worked with the plaintiff on several jobs prior to and after his accident. They were of the opinion that the quality of his work had deteriorated since he returned to work and that his impaired vision was the controlling reason.

Royal F. Jester, Jr., M.D. and ophthalmologist, testified that plaintiff, as a result of the accident, has lost his depth perception, has contracted a cataract and glaucoma condition, has a definite loss of vision even with a corrective lens, and has suffered permanent damage to his left eye.

Neil H. Joseph, M.D., specializing in ophthalmology, testified that plaintiff has a definite impairment of his left eye and could clinically be considered as essentially one-eyed; that the presence of glaucoma would be a continuing discomfort requiring future medication and treatment; and that his left eye could never be normal and a possibility exists it could become progressively worse. The verdict of a jury will not be disturbed unless it is clearly wrong. Andrews v. Wilkie, 181 Neb. 398, 148 N. W. 2d 924; Fleming Realty & Ins., Inc. v. Evans, 199 Neb. 440, 259 N. W. 2d 604.

Counsel for defendant Seward asked the witness, Dr. Joseph, to state what exhibit 46 consisted of without going into detail. The witness replied that it consisted of, in part, a letter from Mr. Knapp, counsel for the plaintiff, dated July 6. Upon persistent further questioning the witness stated he would go into detail only because "you will snarl me otherwise." Plaintiff's counsel, aware of the contents of the letter, cautioned Seward's attorney about going

too far with the letter, but to no avail. The cross-examination continued and the witness made the following answer: "* * * which refers to a copy of a letter of Dr. Jester to Mr. Knapp's office and a letter from Dr. Jester to the office later, a letter from Dr. Smith referring to the stone problem, diamox therapy, and it refers to the attorney representing the insurance company for the petroleum company which owned the car wash, which John had through his car wash, through Mr. Harold Kay, which secured the examination." Defendants' counsel moved for a mistrial because of the reference to "insurance."

It is apparent from the record that counsel for defendant Seward injected the reference to insurance in a situation where the response of the witness was clearly foreseeable or one reasonably to have been anticipated. "* * * defendant [himself] injected the matter of insurance into the case * * * any error committed by plaintiff in making reference to insurance was without prejudice to the defendant." Stephenson v. De Luxe Parts Co., 133 Neb. 749, 277 N. W. 44.

A motion to declare a mistrial is addressed to the sound discretion of the trial court, and its ruling will not be disturbed on appeal in the absence of a showing of an abuse of discretion. Regier v. Nebraska P. P. Dist., 189 Neb. 56, 199 N. W. 2d 742. In this case the trial court in overruling the motion for a mistrial acted within its discretion and there is no error.

Defendant Seward contends the trial court erred in giving instruction No. 2. This instruction was entitled "Statement of the Case" and set forth the allegations of the parties with specific instructions that the jury was to consider subsequent instructions as to the proof of the allegations. Instructions should be considered together so that they may be properly understood, and when, as an entire charge, they properly submit the issues to the jury, the verdict will not be set aside. Beavers v. Christen-

sen, 176 Neb. 162, 125 N. W. 2d 551.

The action of the District Court in entering judgment against Quality is reversed and the cause is remanded with instructions to dismiss as to Quality. In all other respects the action of the District Court in entering judgment pursuant to the verdict of the jury is affirmed.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED.