NORMAN W. GEHRKE AND ARDIS A. GEHRKE,
APPELLEES, V.
GENERAL THEATRE CORPORATION OF NORFOLK,
A CORPORATION, APPELLANT.

298 N.W.2d 773

Filed November 14, 1980. No. 42967.

Jewell, Otte, Gatz, Collins & Domina and Mapes & Mapes for appellant.

Brogan & Stafford, P.C., for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

WHITE, J.

The appellant, General Theatre Corporation of Norfolk (hereafter General), was sued in the District Court for Madison County, Nebraska, by appellees, Norman W. and Ardis A. Gehrke (hereafter Gehrkes), for rents due at the rate of $850 per month. The Gehrkes recovered a judgment against General in the District Court for rent due from November 1, 1977, the date payments stopped, to August 1, 1979, the last due date prior to judgment. General appeals. We affirm.

The leased premises constitute a theater building in Norfolk, Nebraska. General operated the theater which it rented from the Gehrkes. In their petition, the Gehrkes alleged that General abandoned the premises on or about September 1, 1977, and neglected to pay rent due from November 1, 1977, to August 1, 1979. In its answer, General alleged that the Gehrkes had breached their obligation under the lease to repair the roof of the leased premises, and that due to the breach, the theater became unfit for use and, therefore, General had been constructively evicted and that no rent was due. The parties waived a jury and the District Court found for the Gehrkes.

In the review of this case, we keep in mind that this is an action at law and the findings of the trial court will not be disturbed unless clearly wrong. In determining whether the findings of the District Court are supported by the evidence, we must consider the evidence and all permissible inferences therefrom in a light most favorable to the successful party. *VSC, Inc. v. Lilja,* 203 Neb. 844, 280 N.W.2d 901 (1979).

General originally leased the theater building from the Gehrkes' predecessor, the Granada Building, on February 24, 1965, for a term of 5 years. The lease was extended by those parties in 1970 for an additional 5 years. In 1972, Gehrkes purchased the building and the lease agreement was assigned to them. In April 1975, the lease between General and Gehrkes was extended for another 5 years and, in September 1977, the building was vacated by General.

The immediate cause of the dispute between the parties in 1977 was the presence of a defect in a large section of the plaster ceiling above the auditorium portion of the theater. The ceiling appeared to be sagging away from the ceiling joists and General contended it constituted a danger to its patrons. The record shows that although the parties met to determine whose responsibility it was to undertake the expensive repair of the ceiling, they could not agree. The auditorium

portion of the building is six stories high and making repairs to the ceiling requires extensive use of scaffolding. It further appears from the evidence that during the term of the previous lease, the plaster from a portion of the ceiling had dislodged. It was unclear from the evidence who repaired the plastered ceiling on those occasions. General contends that the dangerous condition of the plaster ceiling was directly caused by a breach of the Gehrkes' obligation to keep the roof of the building in good repair. General claims that this failure to repair caused rainwater to seep onto the ceiling plaster; the plaster then absorbed the water; and the extra weight ultimately pulled the ceiling from the metal lath and ceiling joists. Evidence produced by the Gehrkes showed that the metal lath, to which the plaster was attached, was improperly nailed to the roof. When the lath was attached in 1927, the heads of nails used were too small to hold the lath in place. Instead, the smaller nails were bent over the lath to hold it to the ceiling joists. General contended that, should the court find that the falling of the plaster was not due to a leaky roof but to improper construction, the same was not readily apparent to them. They argued that such a defect was a latent defect and not covered by a duty to perform ordinary repairs and that General was not obligated under the terms of the lease to replaster the ceiling. The pertinent provision of Article VI of the lease is as follows: "The Lessor is to keep the roof and exterior of the building in repair during the term of this Lease, and Lessee is to make, at its own expense, all alterations, additions, improvements, heating, air conditioning or cooling and repairs which may become necessary to the interior of the said demised premises . . . ." General's contention that the damage resulted from a leaking roof is easily answered. A building contractor testified that the accumulated dust in the attic space between the suspended ceiling and the roof was evidence that the roof had not leaked in the area in which the plaster had sagged. This same contractor

testified that he believed the cause was the inappropriate construction and improper installation of the metal lath designed to hold the plaster. Over a period of years, the lath simply lost its grip and caused the plaster to sag and the ceiling ultimately to fall. General did introduce evidence to the effect that the sagging plaster was caused by leaks in the roof.

The trial court resolved the dispute in favor of Gehrkes. This conclusion is supported by evidence in the record, and that finding is binding on us. *VSC, Inc. v. Lilja, supra.* The trial court found that the improper installation of the lath was the cause of the sagging and the loss of the plaster. The issue then remaining is whether the lessor or the lessee is responsible for the repair of the plaster ceiling. The law of this jurisdiction regarding the relationship between a commercial landlord and tenant is the common law as modified by judicial interpretation.

"[I]t may be said that in this jurisdiction we have been long committed to these views, viz.:

'The rule of *caveat emptor* applies to leases of real estate, wherein the control passes to the lessee, and, in the absence of fraud, deceit or concealment, the duty devolves upon the lessee to examine the premises with respect to suitability for his business and with respect to safety.'" *Van Avery v. Platte Valley Land & Investment Co.*, 133 Neb. 314, 321, 275 N.W. 288, 292 (1937).

In the absence of an express agreement to the contrary, a lessor does not warrant the fitness or safety of the premises and the lessee takes them as he finds them. *Roan v. Bruckner*, 180 Neb. 399, 143 N.W.2d 108 (1966). Neither the original lease of 1965, nor the assignment in 1972, nor the extension in 1975 contained an express warranty regarding the fitness or safety of the building. There is no evidence that Gehrkes or any predecessor in title were aware of the defect in the installation of the metal lath that held the plaster, nor is there evidence of fraud or deceit. A lessor's duty with respect to latent defects is only to advise the prospective

lessee of any such known defects, not to repair them. *Roan v. Bruckner, supra; Blotcky v. Gahm*, 108 Neb. 275, 187 N.W. 640 (1922). The fact that the defect in the ceiling may have been latent does not place the duty to repair such defect on the lessor. Absent a contract to the contrary, lessor is not bound to make any repairs. *Blotcky v. Gahm, supra.* The contract defines the extent of his duty. *Reicheneker v. Seward*, 203 Neb. 68, 277 N.W.2d 539 (1979). The court properly found that General failed to prove that the damaged ceiling was due to the breach of a covenant in the lease by the Gehrkes; that the lease instead created an affirmative obligation on behalf of General to make necessary repairs; and that there was no breach of any duty by the Gehrkes, and, therefore, no constructive eviction by them. The trial court properly entered judgment for the lessors, the Gehrkes, for the balance due on rent under the lease to the date of judgment.

The trial court's judgment, being fully in accord with the law, is proper and is hereby affirmed.

AFFIRMED.

CLINTON, J., not participating.