LARRY KRANCE, DOING BUSINESS AS KRANCE GRAIN AND LIVESTOCK CO., ET AL., APPELLEES AND CROSS-APPELLANTS, v. WENDELL L. FAEH, APPELLANT AND CROSS-APPELLEE.

338 N.W.2d 55

Filed August 26, 1983. No. 82-486.

Daniel M. Placzek of Luebs, Dowding, Beltzer, Leininger, Smith & Busick, for appellant.

Michael L. Jeffrey and John C. Hahn of Jeffrey, Jeffrey, Hahn & Hemmerling, P.C., for appellees.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

BOSLAUGH, J.

This was an action to recover damages for injury to cattle caused by the ingestion of Dyfonate, a highly toxic insecticide.

The defendant, Wendell L. Faeh, is the lessee of an 80-acre tract of farmland in Merrick County, Nebraska. In 1979 he raised corn on approximately 76 acres of the land. The remainder of the tract was occupied by turnrows, a shelterbelt, and two old gravel pits. The plaintiffs operate a cattle feeding

business. Late in 1979 the plaintiffs arranged with the defendant to run cattle upon the corn ground for $2.50 per acre.

In February 1980 the plaintiffs placed 300 head of their cattle upon the defendant's land. Prior to this time, one of the plaintiffs and his men had erected electric fences on the land. The fences extended into and enclosed the turnrows and a part of the shelterbelt area adjacent to the corn ground. Several days after the cattle had been placed on the land, five or six cattle were found dead. A bag of Dyfonate was discovered in some weeds in the area between the cornfield and the shelterbelt. The bag had been trampled open and a part of the contents consumed by the cattle. Twenty-three cattle died as a result of Dyfonate poisoning. Other cattle recovered following treatment by a veterinarian.

The second amended petition alleged four theories of recovery. The case was submitted to the jury on theories of negligence and strict liability. The jury returned a general verdict for the plaintiffs in the amount of $11,311.40.

The defendant has appealed. The principal assignments of error relate to the sufficiency of the evidence to sustain the judgment and the instructions to the jury.

Although the plaintiffs' brief requests that the judgment be affirmed, they have filed a cross-appeal. The plaintiffs allege that the trial court should have instructed the jury to determine the contractual relationship between the parties and that the trial court should have instructed the jury as a matter of law that the relationship between the parties was that of business invitor-invitee.

Instruction No. 2 read in part as follows: "Defendant Faeh leased the premises involved in this action to the plaintiffs. If you find all of the following conditions true:

"1. There was a condition on the premises which

involved an unreasonable risk of harm to the plaintiffs' cattle.''

The trial court correctly instructed the jury that as to the land leased by the plaintiffs, the relationship between the parties was that of lessor and lessee. Although in fact the defendant was a sublessor and the plaintiffs were sublessees, the same rules apply to this relationship as are applicable to a lessor-lessee relationship. See 49 Am. Jur. 2d *Landlord and Tenant* § 503 (1970).

The trial court was correct in finding as a matter of law that a lessor-lessee relationship existed between the parties. We said in *Johnson v. City of Lincoln*, 174 Neb. 837, 846, 120 N.W.2d 297, 303 (1963): " 'A lease is a species of contract for the possession and profits of land and tenements, either for life, or for a certain period of time, or during the pleasure of the parties; and the essential elements of a contract must be present,' " quoting 51 C.J.S. *Landlord & Tenant* § 202 b. (1947).

In *Hampton v. Struve*, 160 Neb. 305, 70 N.W.2d 74 (1955), we held that a lease is a hiring or renting of land for a certain time upon a named consideration.

The evidence shows that the plaintiffs paid the defendant $2.50 per acre for the right to enter the property, erect fences upon it, and place their cattle upon the property for grazing. It was undisputed that the cattle could remain upon the ground until the ground thawed. No other conclusion can be reached but that the agreement between the parties amounted to a lease.

When reasonable minds can draw but one conclusion from the facts, the trial court must decide the issue as a matter of law and not submit it to a jury. *Feola v. Valmont Industries, Inc.*, 208 Neb. 527, 304 N.W.2d 377 (1981). Therefore, it was not error for the court to instruct the jury that a lease existed between the parties.

The trial court did not err in refusing to instruct the jury as to the duties of a landowner or occupier

to a business invitee. The categories of tenant and invitee are by definition mutually exclusive. See the definitions given in *Roan v. Bruckner*, 180 Neb. 399, 143 N.W.2d 108 (1966).

There is no direct evidence as to how the bag of Dyfonate happened to be left upon the property. The defendant testified that he had used Dyfonate on this field in 1978. The defendant had farmed several farms in both 1978 and 1979 and he was unsure whether he had used Dyfonate on this particular ground in 1979. Sales invoices from a local supplier indicated he had purchased Dyfonate in both 1978 and 1979.

Although the petition alleged and the answer admitted that the plaintiffs had leased from the defendant the entire 260 acres farmed by the defendant, there is some uncertainty in the record as to the exact area leased by the plaintiffs. The defendant testified that he relied on ASCS measurements in determining the number of acres involved in the agreement. Those measurements do not include the turnrows or shelterbelt. The plaintiffs paid for the use of the corn ground only. The defendant did not expressly prohibit the use of the turnrows and shelterbelt, but testified that he did not expect the plaintiffs to use them. Krance, one of the plaintiffs, testified that a part of the shelterbelt was fenced in so as to provide protection for the cattle in the event of a snowstorm.

The defendant contends that it was error for the trial court to instruct the jury that he, as landlord, had a duty to warn the plaintiffs of a condition which presented an unreasonable risk of harm and of which he or his employees knew or "should have known." The defendant argues that a landlord must warn only of conditions of which he has actual knowledge.

The rules governing the duties owed by a landlord to his tenant have been set forth in several cases. " ' "The rule of *caveat emptor* applies to leases of

real estate, wherein the control passes to the lessee, and, in the absence of fraud, deceit or concealment, the duty devolves upon the lessee to examine the premises with respect to suitability for his business and with respect to safety." ' " *Gehrke v. General Theatre Corp.*, 207 Neb. 301, 304, 298 N.W.2d 773, 775 (1980), quoting *Van Avery v. Platte Valley Land & Investment Co.*, 133 Neb. 314, 275 N.W. 288 (1937). See, also, *Roberts v. Rogers*, 129 Neb. 298, 261 N.W. 354 (1935).

" 'A landlord is not liable to his tenant for any defects existing in the demised premises at the time of the lease that are perceptible to the senses or that can be discovered by reasonable inspection or examination.' " *Roan v. Bruckner, supra* at 403, 143 N.W.2d at 111, quoting *Roberts v. Rogers, supra.*

Thus, a landlord has no liability for injuries sustained as a result of dangers existing prior to the lease and which were obvious or which should have been discovered upon reasonable investigation by the tenant. A recognized exception to this rule involves "latent defects," that is, one " 'which reasonably careful inspection will not reveal; one which could not have been discovered by inspection.' " *Roberts v. Rogers, supra* at 303, 261 N.W. at 357. "A lessor's duty with respect to latent defects is only to advise the prospective lessee of any such *known* defects, not to repair them." (Emphasis supplied.) *Gehrke v. General Theatre Corp., supra* at 304-05, 298 N.W.2d at 775.

This exception is set forth in Restatement (Second) of Torts § 358 at 243 (1965), as follows: "(1) A lessor of land who conceals or fails to disclose to his lessee any condition, whether natural or artificial, which involves unreasonable risk of physical harm to persons on the land, is subject to liability to the lessee and others upon the land with the consent of the lessee or his sublessee for physical harm caused by the condition after the lessee has taken possession, if

"(a) the lessee does not know or have reason to know of the condition or the risk involved, and

"(b) the lessor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk."

While the rule embodied in the Restatement does not adopt an ordinary negligence standard with regard to the lessor's knowledge of the risk involved, neither does it limit a lessor's liability to situations in which he has actual knowledge of the presence of a latent, dangerous condition. Rather, the rule would impose liability for failure to disclose upon the landlord who has knowledge of facts which would lead him to conclude that an unreasonably dangerous, latent defect exists on his property. Enlightenment upon this point is provided in Comment b. to § 358 at 244: "It is not, however, necessary that the vendor have actual knowledge of the condition, or that he be in fact aware that it involves an unreasonable risk of physical harm to persons on the land. It is enough that he has reason to know that the condition exists, as that phrase is defined in § 12(1)—that is, that he has information from which a person of reasonable intelligence, or of his own superior intelligence, would infer that the condition exists, or would govern his conduct on the assumption that it does exist, and in addition would realize that its existence will involve an unreasonable risk of physical harm to persons on the land.

"The lessor must also have reason to believe that the lessee will not discover the condition, or that he will not realize the risk. The lessor is under no duty to warn the lessee of a condition which he reasonably believes that the lessee will discover, or of the extent of the risk involved in an obvious condition, unless he should realize that the lessee is unlikely to appreciate it." See *Lapp v. Rogers*, 265 Or. 586, 510 P.2d 551 (1973), in which § 358 is adopted. See, also,

*Richards v. Dahl*, 289 Or. 747, 618 P.2d 418 (1980), in which the Restatement rule is cited.

The evidence is that when the cattle were placed in the field there were several inches of snow on the ground. The Dyfonate was in a weedy area, but near areas where both the defendant and plaintiffs had been.

The instruction holding the landlord to a "should have known" standard with regard to his duty to disclose was erroneous, and the instruction should have been phrased in accordance with the language of the Restatement.

The trial court also instructed the jury in part as follows: "The defendant, Wendell Faeh, was carrying on an ultra-hazardous activity if you find that he abandoned Dyfonate, a dangerous instrumentality and toxic chemical, in the field without properly disposing of the same. If you so find he abandoned the Dyfonate, he is liable to the plaintiff [sic], Christensen Cattle Company and Larry Krance, d/b/a Krance Grain and Livestock Company, *however high a degree of care he may have exercised.*" (Emphasis supplied.)

This instruction made the defendant strictly liable for any foreseeable injury caused by his use of Dyfonate, as it was an "ultrahazardous activity." The instruction was erroneous in several respects and should not have been given.

The relationship between the parties was that of lessor-lessee. The only duties owed by the defendant to the plaintiffs were those traditionally owed by a landlord, and which have been detailed above. "The largest single area in which the concept of 'duty' has operated as a limitation upon liability has concerned owners and occupiers of land." W. Prosser, Handbook of the Law of Torts § 57 at 351 (4th ed. 1971). A lease is regarded as the sale of the premises for a term. *Id.* at § 63. Whether the defendant was liable for the presence of a defective

condition upon the land leased had to be determined by the rules appropriate to the relationship created by the lease.

There were issues of fact to be determined by the jury, and the defendant was not entitled to a directed verdict.

The judgment is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

WHITE and SHANAHAN, JJ., concurring.

We concur only for a reason not discussed by the majority.

The trial court found as a matter of law that the appellees were lessees of that part of the appellant's land where the Dyfonate was located. The appellant contends that the site of the Dyfonate is outside the area leased to the appellees. There was evidence to support appellant's assertion. The relationship of the parties determines the rights and duties arising from the use or occupancy of the land. The nature of the relationship should have been submitted to the jury, and it was error not to do so.