Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/09/2018 08:16 AM CST

Danielle Benard, appellant, v.
McDowall, LLC, appellee.

___ N.W.2d ___

Filed December 15, 2017.    No. S-16-946.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Negligence: Proof.** In order to recover in a negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages.

4. **Negligence.** The question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation.

5. **Summary Judgment: Proof.** The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law.

6. ____: ____. A prima facie case for summary judgment is shown by producing enough evidence to demonstrate that the movant is entitled to a judgment in its favor if the evidence were uncontroverted at trial.

7. **Summary Judgment: Evidence: Proof.** After the movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence was uncontroverted at trial, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion.

8. **Landlord and Tenant: Liability.** In Nebraska, the obligation of a landlord to warn of a dangerous condition on leased premises is based on the Restatement (Second) of Torts § 358 (1965).

9. \_\_\_\_: \_\_\_\_. As a general rule, in the absence of statute, covenant, fraud, or concealment, a landlord who gives a tenant full control and possession of the leased property will not be liable for personal injuries sustained by the tenant or other persons lawfully upon the leased property.

10. **Landlord and Tenant: Contracts.** In the absence of an express agreement to the contrary, a lessor does not warrant the fitness or safety of the premises and the lessee takes them as he or she finds them.

11. **Landlord and Tenant: Liability: Contracts.** A lessor of land is subject to liability for physical harm caused to his lessee and others upon the land with the consent of the lessee or his sublessee by a condition of disrepair existing before or arising after the lessee has taken possession if (1) the lessor, as such, has contracted by a covenant in the lease or otherwise to keep the land in repair, (2) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented; and (3) the lessor fails to exercise reasonable care to perform his contract.

12. **Negligence: Liability: Contracts.** Liability in negligence based on contract is dependent on the terms of the agreement.

13. **Landlord and Tenant: Words and Phrases.** The word "repair" means to restore to a sound or good state after decay, injury, dilapidation, or partial destruction.

Appeal from the District Court for Douglas County: Peter C. Bataillon, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Eric R. Chandler, of Law Office of Eric R. Chandler, P.C., L.L.O., for appellant.

Michael T. Gibbons, Aimee C. Bataillon, and Raymond E. Walden, of Woodke & Gibbons, P.C., L.L.O., for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Miller-Lerman, J.
## NATURE OF CASE
Danielle Benard sustained injuries when she fell on the entry step of the single-family home (Property) she rented. She

brought a negligence action against her landlord, McDowall, LLC. The district court for Douglas County granted summary judgment in favor of McDowall, and Benard appeals. Although the district court did not err in the portion of the ruling in the summary judgment order with regard to Benard's theory that McDowall was obligated to warn her of a dangerous condition on the Property, due to genuine issues of material fact, the district court erred with respect to Benard's allegation that McDowall failed to repair and maintain the Property as required by the November 1, 2011, lease (Lease). We affirm in part, and in part reverse and remand for further proceedings.

## STATEMENT OF FACTS

Benard seeks damages for injuries she suffered after falling on the steps leading to the front entryway of the Property, which she leased from McDowall. The Property was located in Omaha, Nebraska.

Benard's complaint alleged that on September 23, 2012, she fell on the front concrete step of the Property and seriously injured her ankle and sustained damages. In her deposition, she testified that shortly before midnight, she was standing on the front step, concluding a telephone call, and when she stepped off the step, the heel of her shoe became stuck in a crack or gap between the front stoop and the front step and she lost her balance and fell to the ground. She gathered her cell phone and keys and reentered the Property. Her fall resulted in torn ligaments in her ankle, for which she ultimately underwent surgery.

Benard presented evidence of ongoing disrepair of the front entryway despite orders from a city housing code inspector to make repairs. Seven months prior to the execution of the Lease, in March 2011, a housing code inspector for the city of Omaha's planning department (Planning Department) had inspected the Property and, on April 5, 2011, notified McDowall that occupancy of the Property was prohibited until

repairs were made, because numerous violations made the dwelling "unfit for human occupancy." These violations for "unsafe structure[s]" included the sinking front step, which needed to be "mud jacked," or lifted, leveled, and stabilized. Benard claims that McDowall never notified her of the safety code violations or completed the repairs ordered by the Planning Department.

The record also contains a "Section 8" Omaha Housing Authority inspection checklist completed prior to Benard's fall, dated July 31, 2012. The checklist indicates that the property passed the Section 8 inspection for "Condition of Stairs, Rails, and Porches."

McDowall's designated representative testified in his deposition that prior to renting the house to Benard, he completed all repairs required by the April 2011 Planning Department's list of violations. He testified that he jacked up the step using a pry bar and some boards, reached underneath, and packed in dirt and gravel to bolster the step.

In 2013, subsequent to Benard's injury, the Planning Department again inspected the Property and concluded that no repairs had been made to the front steps and found that the front steps were still in an unsafe condition. The Planning Department housing inspector who conducted both the 2011 and 2013 inspections stated in an affidavit that "[d]uring my inspection on April 5, 2013, I found that the previous violations noted in the March 2011 inspection, including the sunken front steps, had not been remedied, and that the property had been unlawfully occupied." On April 8, 2013, the housing inspector issued an "Order to Vacate" regarding the Property.

Benard testified at her deposition that she viewed the Property once or twice prior to entering into the residential Lease with McDowall. During her walk throughs, a McDowall representative named "Chris" informed her that he "still had to fix stuff on the house" and that he "was still working on the house." Benard could not recall whether "Chris" informed

her of particular repairs. However, she denied seeing any "big, glaring, red flags" at that time and she wanted to "hurry up and move."

The Lease contained provisions pertaining to safety and maintenance, excerpted below:

> **9. Condition of Premises.** Lessee stipulates that he has examined the demised premises, including the grounds and all buildings and improvements, and that they are, at the time of the lease, in good order, repair, and a safe, clean, and tenantable condition.
>
> . . . .
>
> **20. Maintenance and Repair.** Lessee will, at his sole expense, keep and maintain the leased premises and appurtenances in good and sanitary condition and repair during the term of this lease and any renewal thereof. In particular, Lessee shall keep the fixtures in the house or on or about the leased premises in good order and repair; keep the furnace clean; keep the electric bills in order; keep the walks free from dirt and debris; and, at his sole expense, shall make all requested repairs to the plumbing, range, heating[] apparatus, and electric and gas fixtures whenever damage thereto shall have resulted from Lessee's misuse, waste, or neglect or that of his employee, family, agent, or visitor. *Major maintenance and repair of the leased premises, not due to Lessee's misuse, waste, or neglect or that of his employee, family, agent, or visitor, shall be the responsibility of Lessor or his assigns*.

(Emphasis supplied.)

Benard testified that at some point after she moved in, she noticed that the front steps of the Property were sinking in and shifting. Because of the condition of the steps, she began to turn to the side and descend hip first. Benard testified that during the year she resided at the Property before she was injured, several other friends and family members either tripped on or expressed difficulty navigating the steps. During

the year between her move-in date and her injury, Benard's niece and twin nephews had tripped on the step, and her niece advised her that the step needed to be fixed. She testified that when a representative of McDowall would come to collect her rent, she would step outside her house and he would see her navigate the steps sideways, inferring that McDowall was on notice. Benard stated, however, that she did not explicitly notify McDowall of her ongoing issues with the step and landing or of any worsening of the condition.

On February 17, 2014, Benard filed this negligence action to recover damages for the injuries she sustained in her fall. She alleged that McDowall was negligent in failing to properly maintain and repair the front steps of the Property and for failing to notify Benard of the defect in the front steps. In its answer, McDowall alleged, inter alia, that Benard was negligent to a degree sufficient to bar or reduce her recovery.

After the parties exchanged written discovery and took depositions, McDowall moved for summary judgment. Following a hearing, the district court took the matter under advisement. In its written order, filed July 13, 2016, the district court determined that there was no evidence that McDowall concealed or failed to disclose the condition of the steps and that the condition was open and obvious. The court further found that the undisputed evidence showed that Benard was aware of the condition of the steps at the time she fell. Based on these reasons, the court granted summary judgment in favor of McDowall and dismissed the complaint.

This appeal followed.

## ASSIGNMENT OF ERROR

On appeal, restated, Benard claims generally that the district court erred when it granted summary judgment in McDowall's favor.

## STANDARDS OF REVIEW

[1,2] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence

show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Midland Properties v. Wells Fargo*, 296 Neb. 407, 893 N.W.2d 460 (2017). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## ANALYSIS

In this negligence action, Benard alleged that McDowall was liable because, as landlord of her rental home, McDowall failed to maintain and repair the front steps and failed to notify her of the defect in the front steps. McDowall denied the substantive allegations and alleged that Benard was contributorily negligent. At the summary judgment hearing, McDowall presented evidence that Benard was aware of the condition of the steps and the district court granted summary judgment in favor of McDowall generally based on its reasoning that McDowall had not concealed the danger.

Although the district court did not err in the portion of the ruling in the summary judgment order with regard to Benard's theory that McDowall was obligated to warn her of a dangerous condition, due to genuine issues of material fact, the district court erred with respect to Benard's allegation that McDowall failed to repair and maintain the property as required by the Lease. We affirm in part, and in part reverse and remand for further proceedings.

## APPLICABLE LAW

[3,4] In order to recover in a negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages. *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 280 Neb. 205, 784 N.W.2d 907 (2010). The question whether a legal duty exists for actionable

negligence is a question of law dependent on the facts in a particular situation. *Id.*

[5-7] The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Tolbert v. Jamison*, 281 Neb. 206, 794 N.W.2d 877 (2011). A prima facie case for summary judgment is shown by producing enough evidence to demonstrate that the movant is entitled to a judgment in its favor if the evidence were uncontroverted at trial. *Id.* After the movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence was uncontroverted at trial, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion. *Id.* In reviewing a summary judgment, we give the party against whom the judgment was entered all reasonable inferences deducible from the evidence. *Id.* (citing *Wilson v. Fieldgrove*, 280 Neb. 548, 787 N.W.2d 707 (2010)).

This case involves a dangerous condition on the Property governed by the Lease. The parties argue many theories not repeated here which are not dispositive. The centerpiece of our analysis are the long-established obligations between a landlord and a tenant with regard to (1) warning and (2) repairing dangerous conditions on leased premises.

## LANDLORD'S ALLEGED FAILURE TO NOTIFY TENANT OF DANGEROUS CONDITION

[8] In Nebraska, the obligation of a landlord to warn of a dangerous condition on leased premises is based on the Restatement (Second) of Torts § 358 (1965). The district court's analysis was guided by a summary of the law reflected in a jury instruction, NJI2d Civ. 8.31, which, adjusted to this case, provides as follows:

Before [Benard] can recover against [McDowall on her claim of failure to warn of the dangerous condition, Benard] must prove, by the greater weight of the evidence, each and all of the following:

1. That there was a condition on the [Property] that involved an unreasonable risk of harm to [Benard];

2. That [Benard] was the lessee . . . ;

3. That [McDowall] knew or had reason to know of this condition and realized or should have realized the risk involved;

4. That [McDowall] concealed or failed to disclose the condition to [Benard];

5. That [Benard] did not know or have reason to know of the condition or the risk involved;

6. That [McDowall] had reason to expect that [Benard] would not discover the condition or realize the risk;

7. That the condition was a proximate cause of some damage to [Benard after she had taken possession of the Property]; and

8. The nature and extent of that damage.

At the hearing on summary judgment, McDowall produced evidence to show that it had no reason to expect that Benard would not discover the condition or realize the risk. In this regard, Benard's testimony reflected that the condition of the step and landing were known to her family and friends, including young children; that she took precautionary measures due to the settling of the entryway; and that she understood that McDowall observed the worsening of the condition based on the viewing of the property's exterior by representatives of McDowall.

Benard argues on appeal that McDowall did not have reason to expect that she would realize the risk created by the steps. However, Benard is unable to point to any material fact in the record which shows the risk was concealed or difficult to appreciate that would prevent summary judgment in favor of McDowall on this theory. The district court did not err when

it ruled in favor of McDowall on this theory, and we turn to Benard's remaining theory that McDowall breached its obligation to exercise reasonable care in repairing and maintaining the leased Property.

### LANDLORD'S FAILURE TO REPAIR AND MAINTAIN PROPERTY: LEASE PROVISIONS

[9,10] Regarding a single-family unit, the law may be summarized as follows: "'"As a general rule, in the absence of statute, covenant, fraud or concealment, a landlord who gives a tenant full control and possession of the leased property will not be liable for personal injuries sustained by the tenant or other persons lawfully upon the leased property."'" *Tolbert v. Jamison*, 281 Neb. 206, 215, 794 N.W.2d 877, 885 (2011). This proposition is consistent with the Restatement, *supra*, § 356. We have also stated that "[i]n the absence of an express agreement to the contrary, a lessor does not warrant the fitness or safety of the premises and the lessee takes them as he or she finds them." *Tolbert v. Jamison*, 281 Neb. at 216, 794 N.W.2d at 885. See *Roan v. Bruckner*, 180 Neb. 399, 143 N.W.2d 108 (1966), *abrogated, Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996).

[11] Section 356 of the Restatement notes that there are several exceptions to the nonobligation of the landlord. One exception is contained in the Restatement (Second) of Torts § 357 at 241 (1965), which provides:

A lessor of land is subject to liability for physical harm caused to his lessee and others upon the land with the consent of the lessee or his sublessee by a condition of disrepair existing before or arising after the lessee has taken possession if

(a) the lessor, as such, has contracted by a covenant in the lease or otherwise to keep the land in repair, and

(b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented; and

(c) the lessor fails to exercise reasonable care to perform his contract.

The landlord's duty under a contract to make repairs as reflected in § 357 of the Restatement has been adopted in Nebraska. *Zuroski v. Estate of Strickland*, 176 Neb. 633, 126 N.W.2d 888 (1964). See, also, *Gehrke v. General Theatre Corp.*, 207 Neb. 301, 298 N.W.2d 773 (1980); *Reicheneker v. Seward*, 203 Neb. 68, 277 N.W.2d 539 (1979); *Quist v. Duda*, 159 Neb. 393, 67 N.W.2d 481 (1954).

[12] Liability in negligence based on contract is dependent on the terms of the agreement. The Restatement, *supra*, § 357, comment *d.* at 242-43, provides:

> Since the duty arises out of the existence of the contract to repair, the contract defines the extent of the duty. Unless it provides that the lessor shall inspect the land to ascertain the need of repairs, a contract to keep the premises in safe condition subjects the lessor to liability only if he does not exercise reasonable care after he has had notice of the need of repairs. In any case his obligation is only one of reasonable care.

See, also, *Gehrke v. General Theatre Corp., supra*; *Reicheneker v. Seward, supra*; *Zuroski v. Estate of Strickland, supra*; *Quist v. Duda, supra*.

As noted above, paragraph 20 of the Lease between the parties provided that "[m]ajor maintenance and repair of the leased premises, not due to Lessee's misuse, waste, or neglect or that of his employee, family, agent, or visitor, shall be the responsibility of Lessor or his assigns." Thus, McDowall contracted to make major repairs under the Lease. Further, the record contains some evidence that McDowall made additional oral promises to Benard regarding future repairs on the Property. According to Benard's testimony, during her visits with a McDowall representative to tour the Property, the representative indicated that he "was still working on the house" and "still had to fix stuff on the house," from which

we infer McDowall's intention to make repairs consistent with the Lease.

[13] "The word 'repair' means to restore to a sound or good state after decay, injury, dilapidation, or partial destruction." *Zuroski v. Estate of Strickland*, 176 Neb. at 634, 126 N.W.2d at 890. McDowall does not contest that the work required to lift and support the exterior concrete step and landing is a major repair to the property and that major repairs are covered in paragraph 20 of the Lease.

In the underlying complaint, Bernard pled, inter alia, theories of negligence based on McDowall's alleged failure to repair and maintain the steps. We consider the evidence regarding initial repairs first. Through the Planning Department's 2011 notice, Benard's evidence showed that the step was in need of repair at that time. And the affidavit from the housing code inspector from the Planning Department stated that in 2013, he "found that the previous violations noted in the March 2011 inspection, including the sunken front steps, had not been remedied, and that the property had been unlawfully occupied." Benard also testified that the step was problematic throughout her tenancy.

But the record is disputed regarding whether the steps were repaired, and if so, whether the repairs were made before or during Benard's occupancy. Paragraph 9 of the Lease provides that the tenant has "examined the demised premises, including the grounds and all buildings and improvements, and that they are, at the time of the lease, in good order, repair, and a safe, clean, and tenantable condition." The deposition testimony by a representative of McDowall claimed that he repaired the step by raising it up and packing additional dirt and sand underneath prior to Benard's tenancy, which he claims was done to remedy the housing code violation in 2011. As noted, the Section 8 inspection approved of the condition of the steps. In contrast, Benard's testimony indicated that repairs, if made, were not effective during her tenancy.

In addition to the issue of whether McDowall exercised reasonable care after it had notice of the initial need of repairs, there is the further issue of whether McDowall had notice of any worsening of the step or landing triggering its obligation under the Lease to maintain the steps. Even if McDowall performed repairs to the steps at some point, the record contains additional issues of fact as to whether the repairs were initially effective at eliminating unreasonable danger and whether McDowall was aware thereafter of the worsening of the condition. To this question, Benard testified that a representative of McDowall routinely observed her negotiating the steps in a cautious way when she met the representative in front of the Property to pay her rent. Thus, if McDowall was aware of the worsening or further settling, there is a question of whether it exercised reasonable care after it had such notice of the need of additional repairs. In sum, there are material questions of fact regarding whether McDowall breached its obligations to Benard. As such, McDowall failed to carry its burden to show it was entitled to judgment as a matter of law. The district court erred when it granted summary judgment in favor of McDowall on the theory of McDowall's failure to repair.

CONTRIBUTORY NEGLIGENCE

For completeness, we note that Benard seems to contend on appeal that the district court erred by basing its decision on her alleged contributory negligence. Because we do not read the district court's order as suggested by Benard, we reject this argument.

HEINS v. WEBSTER COUNTY

On appeal, Benard claims that the district court erred because it neglected to decide whether there was a material issue of fact as to whether McDowall's conduct was willful or wanton. Benard cites our decision in *Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996). Even reading Benard's complaint liberally, she alleges only negligence and the issue

of willful and wanton conduct was not properly before the district court on summary judgment. Further, Benard's reliance on *Heins* is not appropriate, because our holding did not abolish the relationship between a landlord and tenant; in *Heins*, we abolished the distinction between invitees and licensees. See *Warner v. Simmons*, 288 Neb. 472, 849 N.W.2d 475 (2014). Benard's argument is without merit. We reject this argument.

## CONCLUSION

Because the undisputed evidence shows that Benard knew or had reason to know of the dangerous condition of the steps and the risk involved, it was not unreasonable for McDowall not to warn Benard of the defective steps. McDowall was entitled to judgment on Benard's theory based on failure to warn. However, genuine issues of material fact preclude an award of summary judgment in favor of McDowall on Benard's theory that McDowall failed to exercise reasonable care to maintain and repair the Property where McDowall had contracted to perform major repairs under the Lease. Accordingly, the district court's order of July 13, 2017, is affirmed in part and in part reversed, and the cause is remanded for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.

WRIGHT, J., not participating in the decision.